IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| FLORA WILLIAMS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 05 C 4268 |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Flora Williams sued her employer, the Board of Education of the City of Chicago ("Board"), for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). The Board has moved for summary judgment, and for the following reasons, the Court grants the motion.

### Facts

Flora Williams has worked for the Board since October 3, 1988. She worked at South Loop Elementary School ("South Loop") in the position of School Clerk I from 1999 until October 27, 2005, when she voluntarily transferred to Adam Clayton Powell Elementary School. As the school clerk at South Loop, Williams served in a general clerical capacity with a broad list of essential functions. She was responsible for several duties, including, among other things, the following: preparing and typing correspondence, memoranda, and reports; opening and sorting incoming mail and school correspondence; serving as a receptionist and greeting and directing visitors to appropriate staff; maintaining attendance records of students and staff;

1

processing and preparing payrolls for school personnel; maintaining enrollment records and processing student transfers; preparing and processing requisitions for the procurement of supplies, instructional materials, furniture, and equipment; maintaining and monitoring the school's petty cash and internal account ledgers; issuing checks and preparing money for deposits; and compiling periodic reports involving payrolls, student enrollment, attendance, and account ledgers.

Williams filed a discrimination charge with the EEOC on February 3, 2004, in which she reported that South Loop Principal Patrick Baccellieri subjected her to sex, age, and race discrimination. She did not file suit based on the allegations in that EEOC charge. On October 18, 2004, Williams filed a second charge with the EEOC, claiming that Baccellieri had retaliated against her for filing the first EEOC charge. In the second EEOC complaint, Williams detailed that the retaliatory behavior began on September 7, 2004 and continued up to and after the filing of the retaliation charge on October 18, 2004.[1] According to Williams, after the filing of the first EEOC charge of discrimination, Baccellieri continually harassed her by giving her unwarranted disciplinary actions, scrutinizing her work, and changing her work area. Additionally, Williams contended that Baccellieri refused to interact with her, did not permit her to work overtime, verbally abused her, assigned her menial tasks, and required her to submit daily student information reports and work activity logs. Williams also stated that she was given onerous work assignments, such as working on student applications for the gifted program,

---

[1] Williams offers several facts in support of her retaliation claim that occurred before February 3, 2004. The Court will only consider actions that occurred after the plaintiff engaged in statutorily protected activity. *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

entering after-school payroll, and collecting receipts from teachers for reimbursement. On July 25, 2006, Williams filed this lawsuit.

Baccellieri has been the principal at South Loop since August 2002 and was Williams' supervisor. Assistant Principal Pamela Sanders oversaw the main office and was Williams' immediate supervisor. During the 2002-2003 school year, Williams worked in the main office with Shirley McCullough, who was a guidance counselor assistant. Due to funding cuts, McCullough was laid off at the end of the school year, and Williams became responsible for McCullough's former duties. Williams states that she felt overloaded with her increased job responsibilities. In September 2003, Baccellieri moved Williams' work space. Because McCullough was no longer working in the main office, Baccellieri states, he moved Williams' work area so that she would be more visible to students, parents, staff, and other visitors to the main office.

Baccellieri issued Williams her first cautionary notice on September 22, 2004, for failing to comply with the Chicago Public School ("CPS") enrollment procedures.[2] He stated in the cautionary notice that the enrollment of a student on September 2, 2004 did not include supporting documents to indicate that the adult who enrolled the student was the student's mother or legal guardian. Baccellieri also stated that the official enrollment did not take place until September 9, 2004. Two school administrators held a meeting to investigate the steps Williams took when enrolling the student. The administrators, the student's mother and grandmother (who was the legal guardian of the student), and Williams attended the meeting.

---

[2]A cautionary notice is not placed in an employee's personnel file; rather, it is a warning to the employee.

Williams said that Baccellieri berated her after the meeting for getting the student's mother involved.

Williams states that in the fall of 2004, Baccellieri gave her onerous work assignments and unreasonable deadlines. In an effort to clarify the timeline for her work assignments, Williams asked Baccellieri to help her prioritize the tasks. According to Williams, Baccellieri would not help her prioritize and instead stated that all of the work was a priority. Around this time, Williams also had difficulty with entering the teacher payroll in a timely manner.

As part of her School Clerk I duties, Williams was responsible for collecting and entering applications from students for free or reduced-price lunch. Under federal regulations, the applications need to be entered within ten days of receipt. On October 21, 2004, James D. Rose, a Compliance Coordinator for the Bureau of Food Services, notified Baccellieri that the lunch applications had not been entered within ten days of receipt and thus were late. Because of the late lunch applications, Baccellieri issued Williams a written reprimand.[3] Around this time, Baccellieri set daily work schedules for Williams and other South Loop employees. Baccellieri states that he asked Williams to submit daily work logs to document her activities in an effort to help her perform her work duties more efficiently.

In December 2004, Baccellieri told Williams that she must stop carbon copying ("cc") individuals who were not South Loop employees on internal school matters. But, on January 18, 2005, Williams wrote Baccellieri a letter and cc'd non-South Loop employees, including Arne Duncan, the CEO of Chicago Public Schools. On January 31, 2005, Baccellieri issued another

---

[3] A written reprimand is a formal discipline notice placed in the employee's personnel file.

4

cautionary notice to Williams for disobeying his previous instruction not to cc outside employees on internal school matters.

Williams did not receive any more cautionary notices or written reprimands after January 2005. She continued to work at South Loop until October 27, 2005, when she voluntarily transferred to Adam Clayton Powell Elementary. She did not experience any reduction in pay or benefits because of the cautionary notices or the written reprimand she had received.

Williams contends that Baccellieri assigned her onerous tasks and other duties outside of her job description as a form of retaliation. For example, in 2004, and again in October 2005, Williams was designated as the "responsible adult" to administer medication to students. The nurse assigned to South Loop was only on campus once a week, and Williams was asked to assist in that role because she was in the main office on a consistent basis. Also, in May 2005, Williams was required to open boxes of books to conduct inventory and retrieve the purchase slips in an unventilated room, although the storeroom where the boxes were stored had doors that could be kept open while an employee was working.

## Discussion

Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to Williams and draw all reasonable inferences in her

5

favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Under Title VII, it is unlawful for an employer to retaliate against an individual for filing an EEOC charge. 42 U.S.C. § 2000e-(3)a. To survive a motion for summary judgment on a retaliation claim, an employee must present a *prima facie* case either through the direct or indirect method of proof. The indirect method of proof requires a plaintiff to establish a *prima facie* case of retaliation through the *McDonnell Douglas* burden-shifting test. *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005). The Court addresses Williams' claim under both the direct and indirect methods of proof.

As an initial matter, the Court must consider whether Williams suffered an adverse employment action. Defendants contend that no adverse employment action took place, and as a result, Williams does not have a retaliation claim. Specifically, they argue that because the tasks Baccellieri asked Williams to perform were within her job description, his directives to perform her job duties cannot be considered materially adverse. This is irrelevant in light of the Supreme Court's recent holding in *Burlington Northern & Santa Fe Ry. v. White*, 126 S.Ct. 2405, 2415 (2006). The Court specifically rejected defendants' argument, explaining that

> [c]ommon sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable. That is presumably why the EEOC has consistently found "[r]etaliatory work assignments" to be a classic and "widely recognized" example of "forbidden retaliation."

*Id.* at 2416 (citation omitted). The Court explained that an adverse employment action for the purpose of Title VII "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id*. at 2412-13. Rather, to succeed on a claim for retaliation, the "plaintiff

6

must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (internal quotation marks omitted). The Court concludes that Williams' increased workload and onerous job assignments could be considered adverse actions under *Burlington Northern*.

**1.      Direct Method of Proof**

To establish a *prima facie* case under the direct method of proof, the employee must demonstrate that she engaged in protected activity and as a result suffered an adverse employment action. *Stone*, 281 F.3d at 644. Though the direct method is ordinarily more onerous because the plaintiff must prove a causal link, it is the plaintiff's only recourse if she "cannot prove that a similarly situated employee who did oppose the employer's practice was not fired or otherwise treated as badly as the plaintiff was" (an element of the indirect method of proof). *Sylvester v. SOS Children's Villages Ill. Inc.*, 453 F.3d 900, 902 (7th Cir. 2006).

The direct method of proof provides the plaintiff with two methods to prove retaliation. The first method is through direct evidence, which "is essentially an 'outright admission' that a challenged action was undertaken for one of the forbidden reasons covered under Title VII." *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005). Because such a glaring admission is rare, the plaintiff may also prove her case under the direct method by using circumstantial evidence that allows the fact-finder to infer retaliation from suspicious timing, ambiguous statements, words and actions toward other employees who have engaged in protected activity, and "other bits and pieces from which an inference of discriminatory intent might be drawn." *Rudin v. Lincoln Land Cmty. Coll.,* 420 F.3d 712, 720-21 (7th Cir. 2005).

7

Williams contends the cautionary and written notices she received seven and nine months after her EEOC charge are evidence of retaliation.  She contends that Baccellieri's treatment—including berating her for failing to complete tasks on an unreasonable deadline in September and October 2004—is evidence of Baccellieri's discriminatory and retaliatory motives.  As circumstantial evidence, Williams argues that Baccellieri must have had something to hide, because in December 2004 and January 2005 he became angry with her for cc'ing officials outside of South Loop.  Williams contends that Baccellieri moved her work station in 2003 in retaliation for her discrimination charge (which, the Court notes, she had not yet filed).  She also felt she was being retaliated against when she was asked to perform tasks outside of her job description, such as administering medicine to students when the nurse was not on campus in fall 2004 and 2005 and opening boxes of books in a small, unventilated room in May 2005.

The Seventh Circuit has long held that an extended time lapse between filing an EEOC charge and a particular adverse action undermines a causal link under the direct method.  *See Fyfe v. City of Fort Wayne*, 241 F.3d 597, 603 (7th Cir. 2001) (eighteen-month interval was insufficient to prove a causal link); *Salvato v. Ill. Dep't of Human Rights*, 155 F.3d 922, 925 (7th Cir. 1998) (six months between protected activity and employment action was too long a lapse to establish a link between the events); *Hughes v. Derwinksi*, 967 F.2d 1168, 1174 (7th Cir. 1992) (four-month lapse between protected activity and termination does not provide an inference of retaliation).  Without more, Williams cannot establish a *prima facie* case based only on the adverse acts that began seven months after she filed a discrimination charge.  In other words, Williams is missing evidence from which a reasonable jury could infer a causal link between her discrimination charge filed in February 2004 and the adverse employment actions she started

experiencing seven months later in September 2004.

In sum, though Williams has presented evidence that she was given onerous tasks and was subject to greater scrutiny and disciplinary actions, she has not provided evidence from which a jury reasonably could infer that these changes were as a result of her EEOC charge. Williams does not have direct evidence that Baccellieri berated her or disciplined her because of her discrimination charge. The evidence she presents either does not support a retaliation claim at all (her work space was moved before she filed a charge of discrimination with the EEOC) or is too distant from her filing of an EEOC charge for a jury reasonably to find it was connected to Williams' filing of that charge. For these reasons, Williams cannot survive summary judgment by relying on the direct method.

**2.      Indirect Method of Proof**

The alternative method for establishing a claim of retaliation is through an adaptation of the *McDonnell Douglas* burden-shifting test. *Stone,* 281 F.3d at 644. This indirect method requires the plaintiff to establish a *prima facie* case consisting of the following four elements: she engaged in protected activity; she performed her job in a satisfactory manner; she nonetheless suffered adverse action; and she was treated less favorably than a similarly situated employee who did not engage in protected activity. *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2002). Once the plaintiff establishes these elements, the burden shifts to the employer to articulate a non-invidious reason for the adverse action. If the defendant is able to do so, then the burden shifts back to the plaintiff to show that the defendant's reason is a pretext for discrimination. *Stone*, 281 F.3d at 644. *See also*, *Moser v. Ind. Dep't of Corrections*, 406 F.3d 895, 903 (7th Cir. 2005).

Williams is unable to make out a *prima facie* case of retaliation under the indirect method. Though Williams filed a discrimination charge, she has not identified any other similarly situated employee who did not engage in the protected activity. Williams contends that she can skip over that step because she is the only School Clerk at South Loop and thus there are no similarly situated employees to serve as a comparison. Yet, as discussed above, though the direct method of proof may be more onerous, it is a plaintiff's only route to prove retaliation if there are no similarly situated employees. *Sylvester*, 453 F.3d at 902.

## Conclusion

For the reasons stated above, the Court grants the Board's motion for summary judgment [docket no. 26]. The Clerk is directed to enter judgment in favor of the defendant. The trial date of January 8, 2007 is vacated.

```
                                    _____
                                          MATTHEW F. KENNELLY
                                          United States District Judge
```

Date:   September 21, 2006